

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Augustine Celaya, Chairman
Committee on State Affairs
House of Representatives
Austin, Texas

Dear Sir:

Opinion No. Q-3540
Re: Constitutionality of S. B.
No. 5, 47th Legislature.

We have your letter of May 15, 1941, requesting our opinion as to the constitutionality of Senate Bill No. 5, now pending before the House of Representatives, and which reads as follows:

"Section.1. The Legislature finds and declares that in recent years recurring droughts and floods have occurred in every county in Texas, causing loss of life and damage to and destruction of property to the extent of millions of dollars and occasioning deep and widespread suffering and distress among the inhabitants of each of such counties; that such facts constitute the occurrence of a public calamity to each of said counties of such nature as to authorize and require the grant of aid by the State to each of said counties to afford relief from the consequences of such calamities and to enable said counties to take steps to prevent and to minimize the consequences of a recurrence thereof.

"Sec. 2. That for a period of five (5) years, beginning with the taxable year 1942, there is hereby donated and granted by the State of Texas to each respective county of this State, one-half of the State ad valorem taxes collected for general revenue purposes

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Augustine Celaya, Chairman, Page 2

upon the property and from the persons in each respective county, except those heretofore donated or appropriated, including ad valorem taxes on the rolling stock belonging to railroad companies, which shall be ascertained and apportioned as now provided by law. The taxes hereby donated and granted shall be levied and assessed and collected as now provided by law, except that the Assessor and Collector of Taxes in each respective county shall forward his reports to the Comptroller of Public Accounts as provided by law and shall pay over to the Treasurer of the county all moneys collected by him at the end of each month and during the period covered by this donation, except such amounts as are allowed by law for assessing and collecting the same, and shall forward a duplicate copy of the receipts given him by the County Treasurer for said money to the Comptroller.

"Sec. 3. Nothing in this Act shall amend, alter, modify, or repeal any donation, grant or remission of taxes heretofore made.

"Sec. 4. The taxes donated and granted by this Act and collected in each respective county shall be used by the County Commissioners' Court of said county for the following purposes: (a) lowering the ad valorem tax rate for county purposes; (b) constructing flood control works and improvements in said county; (c) for improvements to prevent soil erosion and for soil conservation purposes; (d) for irrigation and drainage projects; (e) conservation and utilization of water; (f) for projects sponsored by a county in cooperation with the Federal Works Progress Administration or its successors; (g) for general relief and charitable purposes; (h) for paying the interest and sinking fund on any outstanding bonded indebtedness of the county; (i) for assisting in the development of navigation.

"Sec. 5. The Commissioners' Courts are further authorized, out of any of the taxes herein

donated and granted to their respective counties, to contract with the Governing Board of any River Authority or Water Improvement District, which may include all or any part of such county, to perform construction works for such River Authority or Water Improvement District, or to set aside any part, or all, of the taxes herein donated and granted to such county, for the use of such River Authority or Water Improvement District in retiring its bonded indebtedness, or for the use of such River Authority or Water Improvement District in carrying out any other purpose or purposes for which such River Authority or Water Improvement District was created.

"Sec. 6. If any section, subsection, paragraph, clause, sentence, or word of this Act or the application thereof to any person or circumstance is held invalid, such holding shall not affect the validity of the remaining provisions of this Act; and this Legislature hereby declares that it would have passed such remaining portions despite such invalidity.

"Sec. 7. The fact that each county in Texas has suffered recurring droughts and floods causing loss of life, serious damage to and destruction of property and deep and widespread suffering and distress, constituting a public calamity in each such county; and the fact that aid from the State is necessary to enable such counties to prevent and to minimize the consequences of recurrence of such calamities, create an emergency and an imperative public necessity demanding that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and the same is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted."

You will recall that a similar bill was passed by the Forty-sixth Legislature, that is Senate Bill No. 224, which was held to be unconstitutional by the Dallas Court of Civil Appeals in the case of McCombs, et al v. Dallas County, et al, 136 S. W. (2d) 975. The Supreme Court refused

Honorable Augustine Celaya, Chairman, Page 4

a writ of error in a written opinion. Dallas County v. McCombs, 140 S. W. (2d) 1109. The Court of Civil Appeals held that said S. B. 224 violated Section 9 of Article 8, Section 1 of Article 2, Section 1 of Article 3, Section 18 of Article 5, and Section 35 of Article 3, of the State Constitution. Also, that it was violative of Article 8, Section 6, of our Constitution in two respects, viz: (1) as an appropriation it was not "specific" as therein required, and (2) it was an appropriation for longer than two years.

We believe the Court of Civil Appeals was correct in each of its holdings. The Supreme Court, in its opinion, held that the Act violated that part of Article 8, Section 6, of the Constitution, limiting appropriations to two years. As to the other points, that Court said "we express no opinion on the other constitutional questions involved, as it is not necessary for us to do so."

The Act thus held invalid contained a statement that "these counties---have, from time to time, been visited with public calamities of one kind or another." The Supreme Court rejected the contention made by Dallas County that the Act could be sustained as a grant under the calamity clause of Article 3, Section 51, of the Constitution, in this language:

"It will be noted that the above-quoted emergency clause contains the statement: '* * * and for the further fact that these counties not having heretofore received such donations and appropriations have, from time to time, been visited with public calamities of one kind or another, * * * create an emergency * * *'. It seems to be contended by plaintiffs in error that the above-quoted portion of this Act can be treated as a legislative finding that a necessity exists in all counties benefited by this grant or appropriation for 'aid in cases of public calamity.' as provided for in Section 51 of Article III of our State Constitution, supra. To our minds, the above attempt to make a finding of 'public calamity' falls far short of meeting the requirements of the constitutional provision just mentioned. No attempt is made to

define the kind or character of 'public calamity.' In fact, it is expressly stated that such calamities are 'one kind or another.' Such finding is so general, vague, and indefinite as to amount to nothing. To give effect to such finding would be to make a travesty of that part of Section 51 of Article III of our Constitution which allows the Legislature to grant aid 'in cases of public calamity.'"

The only effort made in the present bill to correct the vices in the old Act is represented by Sections 1 and 7 of this S. B. No. 5. It is our opinion that the constitutional objections to the bill have not been removed. The declaration in the present bill "that in recent years recurring droughts and floods have occurred in every county in Texas, causing loss of life and damage to and destruction of property to the extent of millions of dollars and occasioning deep and widespread suffering and distress among the inhabitants of each of such counties; that such facts constitute the occurrence of a public calamity to each of said counties" is just as general, vague and indefinite, to all practical purposes, as the statement in the other Act so condemned by the Supreme Court.

The calamity clause in Article 3, Section 51, of the Constitution, was not intended to provide a vehicle for the wholesale transfer of money from one constitutional fund to another. It was written into the Constitution to enable the State as a whole to extend relief to those parts of its areas which from time to time might be stricken with such calamitous visitations as fire, flood, tempest and disease. If the declarations in this bill are true and constitute a public calamity, then the whole State, each and every county in it, has been in a condition of public calamity since before the Constitution was written. Adopting the words of Judge Critz, "To give effect to such a finding would be to make a travesty of that part of Section 51 of Article III of our Constitution which allows the Legislature to grant aid in cases of public calamity."

APPROVED MAY 17, 1941

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

ORL:LW

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Glenn R. Lewis

Glenn R. Lewis
Assistant

APPROVED
OPINION
COMMITTEE
BY DLWB
CHAIRMAN